# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

N.G., a minor, by and through : 
BRITTANY GONZALEZ, N.G.'s : 
Parent and Natural Guardian : 
c/o Kline & Specter, P.C. :     No. __2:21-cv-754____
1525 Locust Street : 
Philadelphia, PA 19102 : 
: JURY TRIAL DEMANDED
        and : 
: 
BRITTANY GONZALEZ : 
c/o Kline & Specter, P.C. : 
1525 Locust Street : 
Philadelphia, PA 19102 : 
: 
        *Plaintiffs* : 
: 
    v. : 
: 
INSTANT BRANDS, INC. : 
495 March Road, : 
Suite 200, : 
Kanata, ON, Canada K2K 3G1 : 
: 
        *and* : 
: 
TARGET CORPORATION : 
d/b/a TARGET STORES : 
1000 Nicollet Mall : 
Minneapolis, MN 55403 : 
: 
: 
: 
        *Defendants* : 
:

## CIVIL ACTION COMPLAINT

Plaintiffs, minor N.G., by and through Brittany Gonzalez, minor Plaintiff N.G.'s parent and natural guardian, and Brittany Gonzalez, in her Individual capacity, by and through their undersigned counsel, Kline & Specter, P.C., hereby bring this action against Defendants, Instant Brands, Inc. and Target Corporation, d/b/a Target Stores, and in support thereof aver as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, N.G. is a two-year-old girl and minor resident of the Commonwealth of Pennsylvania who may be reached through her counsel at the above-noted address.

2.      Plaintiff Brittany Gonzalez is minor Plaintiff N.G.'s parent and natural guardian and a citizen and resident of the Commonwealth of Pennsylvania who may be reached through her counsel at the above-noted address.

3.      Defendant Instant Brands, Inc. is a Canadian corporation with its principal place of business at 495 March Road, Suite 200, Kanata, ON, Canada K2K 3G1, and as such is deemed to be a citizen of the Country of Canada.

4.      At all relevant times hereto, Instant Brands, Inc. conducted systematic and continuous business activity within this judicial district.

5.      More specifically, Instant Brands, Inc. distributes products for sale at retail stores within the Commonwealth of Pennsylvania within this judicial district, including, among other places, the Target store at 600 Cahuvet Drive, Pittsburgh, Pennsylvania, 15275, where Plaintiff Brittany Gonzalez purchased the "Instant Pot" at issue in this case.

6.      Defendant, Target Corporation d/b/a Target Stores (sometimes hereinafter "Target") is an American corporation, organized and existing under the laws of the State of

Minnesota with a principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota, 55403.

7.      Target owns and operates retail stores within this judicial district, including, among other places, the Target store at 600 Cahuvet Drive, Pittsburgh, Pennsylvania, 15275, where Plaintiff Brittany Gonzalez purchased the Instant Pot at issue in this case.

8.      Subject matter jurisdiction is proper under 28 U.S.C. § 1332 because Plaintiffs and Defendants are residents of separate states and because the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

9.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim, namely Plaintiff Brittany Gonzalez's purchase of the Instant Pot at issue as well as the accident involving the Instant Pot set forth more fully herein, occurred in this judicial district.

10.     Alternatively, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants Instant Brands, Inc. and Target have sufficient minimum contacts with the Commonwealth of Pennsylvania and have intentionally availed themselves of the markets within Pennsylvania through the promotion, sale, marketing, and distribution of their products, including Instant Pots like the one at issue.

## OPERATIVE FACTS

11.     Defendant Instant Brands, Inc. is in the business of designing, manufacturing, warranting, marketing, distributing, and selling the Instant Pot at issue.

12.     Defendant Target Corporation d/b/a Target Stores is one of the largest retailers in the world. Target sells a variety of types of Instant Pot pressure cookers, including the one at issue in this case, and prominently markets the Instant Pot brand on its website to this day.

13.     The Instant Pot is a pressure cooker device that Instant Brands, Inc. claims prepares "healthy and delicious meals, simply and quickly."[1]

14.     The website for the Instant Pot claims the device is equipped with "**11 Safety Mechanisms** to eliminate many common errors which may cause harm or spoil food."[2]

15.     More specifically, the Instant Pot website claims the Instant Pot contains the following safety features:

- Steam Release – Releases excess pressure by venting steam through the steam release valve/handle.

- Anti-Block Shield – A stainless steel cover which prevents food particles from entering the steam release pipe, reducing the risk of blockages.

- ***Safety Lid Lock – When cooker is pressurized, the lid will automatically lock to prevent opening the cooker. Do not attempt to force the lid open while the cooker is pressurized.***

- Lid Position Detection – If the lid is not in a safe position for pressure cooking, the cooker will not allow cooking to begin.

- Automatic Temperature Control – Regulates heating to ensure the inner pot remains within a safe temperature range, based on the program.

- Overheat (Burn) Protection – Overheating may occur if:

    o   After Sautéing, inner pot has not been deglazed— food is stuck to the bottom

    o   The pressure cooker is being operated without sufficient cooking liquid

    o   The inner pot is not making full contact with the heating element

    o   The inner pot encounters a heat distribution issue, such as when starch accumulates on the bottom of the inner pot.

The cooker will reduce the risk of burning food by lowering the heat output.

---

[1] https://instantpot.com/about-instant-brands/ (*last visited* April 5, 2021).
[2] https://instantpot.com/11-safety-mechanisms-2/ (*last visited* April 5, 2021) (emphasis added and in original).

- Automatic Pressure Control – Maintains working pressure levels. Suspends heating if pressure exceeds pressure level limits.

- Electrical fuse – Cuts off power if the electrical current exceeds safety limits.

- Thermal Fuse – Cuts off power if the internal temperature exceeds safety limits.

- Leaky Lid Detection – If there is steam leakage from the lid (such as, sealing ring not installed, or steam release handle being in "Venting" and not "Sealing" position) the cooker will not pressurize. Loss of steam may cause food to burn. The cooker monitors the pre-heating time and lowers heat output if working pressure is not reached within 40 minutes.

- Self-Diagnostic – Scans components for errors. Displays error codes on-screen.[3]

16.     The Instant Pot User Manual, which was written and distributed by Instant Brands, Inc., also states "[u]ntil cooker pressurizes and float valve has popped up, lid will be removable. ***Once pressurized, lid will lock***."[4]

17.     In addition to its website and User Manual, Instant Brands, Inc., through its trademark Instant Pot, utilizes media outlets and social media platforms such as YouTube to promote the Instant Pot as a safe and reliable product, even though it is not.

18.     More specifically, a YouTube video on Instant Pot's YouTube page entitled "*Getting to Know Your New Instant Pot IP-DUO*"[5] states as follows:

- "Congratulations on buying the most advanced kitchen appliance on the market."[6]

- "The first thing you need to know about your IP-DUO is that ***you don't need to be afraid of it***, as many people are afraid of stovetop pressure cookers."[7]

- "With 10 safety features built in, you can use your Instant Pot with confidence, ***knowing that it is not going to explode***."[8]

---

[3] *Id.*
[4] *Instant Pot Smart Wifi User Manual*, attached as ***Exhibit A***, at 12.
[5] https://www.youtube.com/watch?v=w1RKj9E8TY0 (*last visited* April 5, 2021)
[6] *Id.* at 0:21.
[7] *Id.* at :37.
[8] *Id.* at :46.

- "In addition, keep in mind that your Instant Pot operates at relatively low pressures of 11 to 12 psi or lower, depending on the pressure setting that you use."[9]

19.     In a similar video on Instant Pot's YouTube page entitled "*Introducing Instant Pot IP-DUO series  electric pressure cooker*," spokesperson Laura Pazzaglia, boasts Instant Pot's safety, stating that "once the lid is locked, and the contents are under pressure, ***there is no way to open the pressure cooker***."[10]

20.     The claims set forth in these various sources, all created, published, and distributed by Instant Brands, Inc., through its trademark Instant Pot, are affirmative misrepresentations that caused justifiable reliance among thousands of consumers and users, including Plaintiffs, with disastrous effects.

21.     These representations are not just misleading; they are out-and-out false and put consumers and users like Plaintiffs at significant, undue risk of severe and permanent injury.

22.     On August 18, 2020, Brittany Gonzalez purchased an Instant Pot, "Smart Wifi" model, from the Target store at 600 Cahuvet Drive, Pittsburgh, Pennsylvania, 15275.

23.     Brittany Gonzalez purchased the Instant Pot to cook for herself and her family, including minor Plaintiff N.G., and did so with the reasonable expectation that it was properly designed and manufactured, not unreasonably dangerous, and free from defects of any kind, and that it was safe for its intended, foreseeable use.

24.     However, the Instant Pot was defectively and negligently designed and manufactured by Instant Brands, Inc. in that it failed to properly function as to prevent the lid from being removed with normal or no force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking

---

[9] *Id.* at :55.
[10] https://www.youtube.com/watch?v=bVA2EqPf0s0&t=171s (*last visited* April 5, 2021) at 6:44.

food with the product, placing the Plaintiffs, their family, and similar consumers and users in danger while using the Instant Pot.

25.   Instant Pots possess defects that make them unreasonably dangerous for their intended use by ordinary and average consumers, such that a reasonable person would conclude the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions, because the lid can be rotated and opened while the unit remains pressurized.

26.   Economic, feasible, and safer alternative designs were available that could have prevented the Instant Pot's lid from being rotated and opened while pressurized.

27.   Defendants knew or should have known that Instant Pots possess defects that pose a serious safety risk to Plaintiffs and the public. Nevertheless, Defendants continue to ignore to and/or conceal their knowledge of the Instant Pots' defects from the general public and continue to generate a substantial profit from the design, manufacture, and/or sale of Instant Pot pressure cookers, demonstrating a callous, reckless, and depraved indifference to the health, safety, and welfare of Plaintiffs and consumers and users like them.

28.   The Instant Pot in general and the Instant Pot at issue in this case was unreasonably dangerous in one or more of the following respects:

    a)   The Instant Pot was designed such that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

    b)   The Instant Pot was manufactured such that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

    c)   The Instant Pot failed to warn that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

    d)   The Instant Pot did not comply with applicable industry standards, including UL, ASTM, and ANSI standards;

e) The Instant Pot's website states in reference to the "***Safety Lid Lock***" that, "*[w]hen cooker is pressurized, the lid will automatically lock to prevent opening the cooker. Do not attempt to force the lid open while the cooker is pressurized[,]*" when in fact the lid could be opened with normal force when the pot is under pressure, causing scalding hot contents to erupt from the pot when the lid is opened.

f) YouTube videos created by Instant Brands, Inc. state that users do not need to be afraid of it, that it "***is not going to explode***," and that the lid cannot be opened once the pot is under pressure, when in fact the lid could be opened when the pot is under pressure, causing scalding hot contents to erupt from the pot when the lid is opened.

g) The Instant Pot's User Manual states, "[o]nce pressurized, lid will lock[,]" when in fact the lid could be opened when the pot is under pressure, causing scalding hot contents to erupt from the pot when the lid is opened;

h) The Instant Pot was designed such that the float valve could be in the down position when the contents were still under pressure, rendering the safety feature of locking the lid ineffective, causing scalding hot contents to erupt from the pot when the lid was opened;

i) The Instant Pot was manufactured such that the float valve could be in the down position when the contents were still under pressure, rendering the safety feature of locking the lid ineffective, causing scalding hot contents to erupt from the pot when the lid was opened;

j) The Instant Pot was not adequately tested before distribution and sale; and

k) The Instant Pot marketing, instructions, and packaging, misrepresented its safety characteristics and the inability to open the lid when the pot was under pressure, when in fact it could be opened under pressure.

29. Like many other consumers and users before them, Plaintiffs' injuries resulted from the lid being removable when their Instant Pot was under extreme and dangerous amounts of pressure, despite Instant Brands, Inc.'s representations that when the "cooker is pressurized, the lid will automatically lock to prevent opening the cooker."

30. More specifically, on September 18, 2020, Brittany Gonzalez was making soup in the Instant Pot.

31.     After adding her desired ingredients, Brittany Gonzalez properly closed the lid and began the cooking process, setting the timer for sixty minutes.

32.     Once the cooking process was completed, Brittany Gonzalez saw an error message on the screen stating "burn."

33.     Consistent with her understanding of the functionality of the Instant Pot, Brittany Gonzalez released the pressure valve.

34.     After she believed the pot was no longer under pressure, she began to take off the lid.

35.     As soon as Brittany Gonzalez began to take off the lid, during which she used no force, and the lid came off with ease, the lid shot open with great force, spewing the scalding hot contents of the cooker into Plaintiffs' kitchen, making contact with minor Plaintiff N.G., who was on a nearby chair.

36.     Brittany Gonzalez used all of her strength to try to keep the lid closed, but the forces from within the defective Instant Pot were too great, and the contents within continued to fly out.

37.     As soon as the scalding hot contents of the Instant Pot contacted minor Plaintiff N.G., she screamed in pain.

38.     Brittany Gonzalez immediately noticed that her daughter had suffered serious burns and called 9-1-1.

39.     Minor Plaintiff N.G. was taken to Mercy Hospital, where her burns were treated.

40.     As a direct and proximate result of defects in the Instant Pot, minor Plaintiff N.G. sustained third degree burns to her face, neck, chest, left shoulder, anterolateral left arm, and radial left forearm, requiring significant debridement and/or skin grafting.

41.     Minor Plaintiff N.G.'s treatment is ongoing and, on information and belief, will continue well into the future and/or for the rest of her life.

42.     Minor Plaintiff N.G.'s injuries are severe and permanent, and include:

    a) Third degree burns all over her left side face, left shoulder, chest, left arm, and left leg;

    b) Diffuse, permanent hypertrophic scarring all over her left side, including her face, left shoulder, chest, left arm, and left leg;

    c) Shoulder contracture and/or impaired scapular mechanics, also known as "frozen shoulder," and other impairment in use of left arm;

    d) Past medical expenses;

    e) Future medical expenses;

    f) Past pain and suffering;

    g) Future pain and suffering;

    h) Past severe emotional distress;

    i) Future severe emotional distress;

    j) Embarrassment and humiliation;

    k) Loss of enjoyment of life;

    l) Permanent disfigurement; and

    m) Other injuries that may be identified in discovery.

43.     Brittany Gonzalez, who was in the zone of danger and witnessed the horrific accident to her young daughter, suffered the following injuries:

    a) Past severe emotional distress;

    b) Future severe emotional distress;

c) Past medical expenses;

d) Future medical expenses;

e) Loss of enjoyment of life; and

f) Other injuries that may be identified in discovery.

44.     As a direct and proximate result of Defendants' defective product, their failure to warn consumers of such defects, their negligent misrepresentations, their failure to remove a product with such defects from the stream of commerce, and, in the case of Instant Brands Inc.'s negligent design and negligent/reckless concealment of such defects, Plaintiffs used an unreasonably dangerous pressure cooker, which resulted in the significant bodily and mental injuries as set forth above.

**COUNT I**
**STRICT PRODUCTS LIABILITY**
**Minor Plaintiff N.G. v. All Defendants**

45.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

46.     At all relevant times hereto, Defendants knew or should have known of the foreseeable risk of burn injury inherent in the design of the Instant Pot.

47.      At the time Defendants designed, manufactured, marketed, sold, and distributed the subject Instant Pot, it was defective in its design, unreasonably dangerous, and unsafe for its intended purpose because it did not provide adequate protection against the foreseeable risk of burn injury.

48.     The Instant Pot at issue was in the same or substantially similar condition as when it left the possession of Defendants.

49.     Plaintiffs did not misuse or materially alter the Instant Pot.

50.     The Instant Pot did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way.

51.     Further, a reasonable person would conclude that the possibility and seriousness of harm outweighs the burden or cost of making the Pressure Cookers safe.

52.     The Instant Pot was defective, subjecting Defendants to strict liability, in one or more of the following respects:

a)  The Instant Pot was designed such that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

b)  The Instant Pot was manufactured such that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

c)  The Instant Pot did not comply with applicable industry standards, including UL, ASTM, and ANSI standards;

d)  The Instant Pot's website states in reference to the "*Safety Lid Lock*" that, "*[w]hen cooker is pressurized, the lid will automatically lock to prevent opening the cooker. Do not attempt to force the lid open while the cooker is pressurized[,]*" when in fact the lid could be opened when the pot is under pressure, causing scalding hot contents to erupt from the pot when the lid is opened.

e)  YouTube videos created by Instant Brands, Inc. state that users do not need to be afraid of it, that it "*is not going to explode*," and that the lid cannot be opened once the pot is under pressure, when in fact the lid could be opened when the pot is under pressure, causing scalding hot contents to erupt from the pot when the lid is opened.

f)  The Instant Pot's User Manual states, "[o]nce pressurized, lid will lock[,]" when in fact the lid could be opened when the pot is under pressure, causing scalding hot contents to erupt from the pot when the lid is opened;

g)  The Instant Pot was designed such that the float valve could be in the down position when the contents were still under pressure, rendering the safety feature of locking the lid ineffective, causing scalding hot contents to erupt from the pot when the lid was opened;

h)  The Instant Pot was manufactured such that the float valve could be in the down position when the contents were still under pressure, rendering the safety

12

feature of locking the lid ineffective, causing scalding hot contents to erupt from the pot when the lid was opened;

i) The Instant Pot was not adequately tested before distribution and sale;

j) The Instant Pot marketing, instructions, and packaging, misrepresented its safety characteristics and the inability to open the lid when the pot was under pressure, when in fact it could be opened under pressure; and

k) Other dangerous conditions of the Instant Pot that may be identified in the course of discovery.

53.     The defectiveness and unreasonably dangerous condition of the Instant Pot were direct and proximate causes of minor Plaintiff N.G.'s severe and permanent injuries, as previously set forth herein.

54.     Defendants are strictly liable to Plaintiffs for designing, manufacturing, and failing to warn of the dangers of a defective and unreasonably dangerous product. The inherent risks associated with the Instant Pot outweighed the benefits of its use, as a safer alternative design was economically and technologically feasible at the time the product left the control of Defendants.

55.     Alternatively, the Instant Pot "malfunctioned" as that term is used in *Ducko v. Chrysler Motors Co.*, 639 A.2d 1204 (Pa. Super 1994) (citing *Rogers v. Johnson & Johnson Products, Inc.,* 565 A.2d 751, 754 (Pa. 1989)).

56.     As such, Plaintiffs are entitled to recover for minor Plaintiff N.G.'s injuries.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

**COUNT II**
**STRICT LIABILITY – FAILURE TO WARN**
**<u>Minor Plaintiff N.G. v. All Defendants</u>**

57.    Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

58.    At all relevant times hereto, Defendants knew or should have known of the substantial dangers and inherent risks of burn injury involved in the reasonably foreseeable use of the Instant Pot.

59.    Defendants knew or should have known that the substantial dangers and inherent risks of burn injury involved in the reasonably foreseeable use of the Instant Pot were not readily recognizable to an ordinary consumer or user and that such person would use the Instant Pot without inspection for defects.

60.    Defendants knew or should have known of the foreseeable risk of burn injury inherent in the design of the Instant Pot.

61.    Defendants acted negligently and recklessly by failing to provide necessary safety materials and failing to adequately warn of the substantial dangers and known and foreseeable risk of burn injury, by failing to provide adequate warnings regarding one or more of the following:

    a) The Instant Pot's lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened, and that serious injury could result from opening under pressure;

    b) The Instant Pot may still be under pressure even though certain functionalities, like the float valve, and indicators, like the screen display, might indicate that the pot is not under pressure, and that serious injury could result from opening under pressure; and

    c) Other dangerous conditions of the Instant Pot that may be identified in the course of discovery.

62.    Any such safety material and/or warning that may have been provided and/or attached to the Instant Pot was inadequate, nullified, or rendered ineffective by contrary representations made by Defendants regarding the safety of the Instant Pot.

63.     As a result of Defendants' recklessness and failure to adequately warn, Plaintiffs neither knew nor had reason to know about the existence of defects in the Instant Pot, as previously set forth herein.

64.     At all relevant times hereto, Plaintiffs used the Instant Pot in a reasonably foreseeable manner.

65.     Defendants' failure to warn of the substantial dangers and inherent risks of burn injury associated with the reasonably foreseeable use of the Instant Pot was the direct and proximate cause of minor Plaintiff N.G.'s severe and permanent injuries, as previously set forth herein.

66.     Defendants are strictly liable for failing to warn consumers and users of the substantial dangers and inherent risks of burn injury associated with the reasonably foreseeable use of the Instant Pot.

67.     As such, Plaintiffs are entitled to recover for minor Plaintiff N.G.'s injuries.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

**COUNT III**
**NEGLIGENCE**
**<u>Minor Plaintiff N.G. v. All Defendants</u>**

68.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

69.     At all relevant times hereto, Defendants owed a duty to consumers to use reasonable care in the way they designed, manufactured, marketed, sold, and distributed the Instant Pot.

70.     At all relevant times hereto, Defendants knew or should have known of the foreseeable risk of burn injury inherent in the Instant Pot.

71.     Defendants breached the duty of care they assumed to consumers and were negligent, careless, and reckless in designing, manufacturing, marketing, selling, and distributing the Instant Pot in one or more of the following respects:

a) The Instant Pot was designed such that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

b) The Instant Pot was manufactured such that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

c) The Instant Pot failed to warn that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

d) The Instant Pot did not comply with applicable industry standards, including UL, ASTM, and ANSI standards;

e) The Instant Pot's website states in reference to the "***Safety Lid Lock***" that, "***[w]hen cooker is pressurized, the lid will automatically lock to prevent opening the cooker. Do not attempt to force the lid open while the cooker is pressurized[,]***" when in fact the lid could be opened when the pot is under pressure, causing scalding hot contents to erupt from the pot when the lid is opened.

f) YouTube videos created by Instant Brands, Inc. state that users do not need to be afraid of it, that it "***is not going to explode***," and that the lid cannot be opened once the pot is under pressure, when in fact the lid could be opened when the pot is under pressure, causing scalding hot contents to erupt from the pot when the lid is opened.

g) The Instant Pot's User Manual states, "[o]nce pressurized, lid will lock[,]" when in fact the lid could be opened when the pot is under pressure, causing scalding hot contents to erupt from the pot when the lid is opened;

h) The Instant Pot was designed such that the float valve could be in the down position when the contents were still under pressure, rendering the safety feature of locking the lid ineffective, causing scalding hot contents to erupt from the pot when the lid was opened;

    i)   The Instant Pot was manufactured such that the float valve could be in the down position when the contents were still under pressure, rendering the safety feature of locking the lid ineffective, causing scalding hot contents to erupt from the pot when the lid was opened;

    j)   The Instant Pot was not adequately tested before distribution and sale; and

    k)   The Instant Pot marketing, instructions, and packaging, misrepresented its safety characteristics and the inability to open the lid when the pot was under pressure, when in fact it could be opened under pressure;

    l)   Other dangerous conditions of the Instant Pot that may be identified in the course of discovery.

72.    Defendants' negligence, carelessness, and recklessness in designing, manufacturing, marketing, selling, and distributing the Instant Pot were the direct and proximate cause of minor Plaintiff N.G.'s severe and permanent injuries, as previously set forth herein.

73.    As such, Plaintiffs are entitled to recover for minor Plaintiff N.G.'s injuries.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT IV
## NEGLIGENT/RECKLESS MISREPRESENTATION
## Minor Plaintiff N.G. v. All Defendants

74.    Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

75.    At all relevant times hereto, Defendants knew or should have known of the foreseeable risk of burn injury inherent in the Instant Pot.

76.    Defendants negligently and recklessly misrepresented material facts regarding the safety of the Instant Pot in one or more of the following respects:

a) Marketing the Instant Pot as safe;

b) Marketing the Instant Pot by telling consumers and users that the pot is "***not going to explode***" even though Instant Pots are, in fact, prone to exploding and flying open, causing their scalding hot contents to erupt from therein;

c) Marketing the Instant Pot in a way that consumers and users would believe that the lid could not be opened while still under pressure;

d) Failing to warn that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

e) failing to issue any post-sale modifications or additional warnings in an effort to eliminate the unreasonably dangerous nature of the Instant Pot, which was reasonably foreseeable; and

f) Other misrepresentations regarding the Instant Pot that may be identified in the course of discovery.

77.     Defendants knew or should have known that consumers and users, including Plaintiffs, would accept the material misrepresentations made regarding the Instant Pot's safety as true and accurate.

78.     Defendants knew or should have known that consumers, including Plaintiffs, would rely on the material misrepresentations made regarding the Instant Pot's safety when deciding whether to purchase and use it.

79.     Defendants made material misrepresentations regarding the safety of the Instant Pot with the intent to induce consumers, including Plaintiffs, to purchase and use it.

80.     Plaintiffs justifiably relied on Defendants' material misrepresentations regarding the safety of the Instant Pot when deciding whether to use it on September 18, 2020.

81.     As a direct and proximate result of Defendants' material misrepresentations, minor Plaintiff N.G. suffered severe and permanent injuries while Brittany Gonzalez was using the Instant Pot in a reasonably foreseeable manner, as previously set forth herein. As such, Plaintiffs are entitled to recover for minor Plaintiff N.G.'s injuries.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

**COUNT V**
**BREACH OF EXPRESS WARRANTY**
<u>**Minor Plaintiff N.G. v. Instant Brands, Inc.**</u>

82.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

83.     Instant Brands, Inc. expressly warranted that its Instant Pot pressure cookers were safe and effective to members of the consuming public, including Plaintiffs.

84.     More specifically, Defendants expressly warranted that the lids of the Instant Pot pressure cooker could not be removed while the unit remained pressurized.

85.     Indeed, Instant Brands, Inc.'s warranties consisted of one or more of the following:

a)   the Instant Pot website claims the Instant Pot contains the following safety features:

- Steam Release – Releases excess pressure by venting steam through the steam release valve/handle.

- Anti-Block Shield – A stainless steel cover which prevents food particles from entering the steam release pipe, reducing the risk of blockages.

- Safety Lid Lock – When cooker is pressurized, the lid will automatically lock to prevent opening the cooker. Do not attempt to force the lid open while the cooker is pressurized.

- Lid Position Detection – If the lid is not in a safe position for pressure cooking, the cooker will not allow cooking to begin.

- Automatic Temperature Control – Regulates heating to ensure the inner pot remains within a safe temperature range, based on the program.

- Overheat (Burn) Protection – Overheating may occur if:

      o   After Sautéing, inner pot has not been deglazed— food is stuck to the bottom

      o   The pressure cooker is being operated without sufficient cooking liquid

      o   The inner pot is not making full contact with the heating element

      o   The inner pot encounters a heat distribution issue, such as when starch accumulates on the bottom of the inner pot.

          The cooker will reduce the risk of burning food by lowering the heat output.

- Automatic Pressure Control – Maintains working pressure levels. Suspends heating if pressure exceeds pressure level limits.

- Electrical fuse – Cuts off power if the electrical current exceeds safety limits.

- Thermal Fuse – Cuts off power if the internal temperature exceeds safety limits.

- Leaky Lid Detection – If there is steam leakage from the lid (such as, sealing ring not installed, or steam release handle being in "Venting" and not "Sealing" position) the cooker will not pressurize. Loss of steam may cause food to burn. The cooker monitors the pre-heating time and lowers heat output if working pressure is not reached within 40 minutes.

- Self-Diagnostic – Scans components for errors. Displays error codes on-screen.

b)  The Instant Pot User Manual, which was written and distributed by Instant Brands, Inc., states that the "[o]nce pot is pressurized, lid will lock."

c)  A YouTube video on Instant Pot's YouTube page entitled "*Getting to Know Your New Instant Pot IP-DUO*" states as follows:

- "The first thing you need to know about your IP-DUO is that **you don't need to be afraid of it**, as many people are afraid of stovetop pressure cookers."

- "With 10 safety features built in, you can use your Instant Pot with confidence, **knowing that it is not going to explode**."

- "In addition, keep in mind that your Instant Pot operates at relatively low pressures of 11 to 12 psi or lower, depending on the pressure setting that you use."

d)  In a similar video entitled on Instant Pot's YouTube page entitled "*Introducing Instant Pot IP-DUO series  electric pressure cooker,*" spokesperson Laura

Pazzaglia, boasts Instant Pot's safety, stating that " once the lid is locked, and the contents are under pressure, ***there is no way to open the pressure cooker***.

86.     Instant Brands, Inc.'s Instant Pot pressure cookers do not conform to these express representations because the lid can be removed using normal force while the Instant Pots remain pressurized, making it not safe for use by consumers.

87.     Therefore, Instant Brands, Inc. breached their express warranties to the consuming public, including, but not limited to, Plaintiffs.

88.     As a direct and proximate result of Instant Brands, Inc.'s breach of express warranties, minor Plaintiff N.G. suffered the injuries set forth herein, entitling Plaintiffs to damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

**COUNT VI**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**Plaintiffs v. Instant Brands, Inc.**

89.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

90.     Instant Brands, Inc. designed, manufactured, marketed, distributed, supplied, and sold its Instant Pot pressure cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently, and safely, knowing that consumers would rely on Instant Brands, Inc's skill and/or judgment to furnish suitable goods.

91.     Members of the consuming public, including consumers such as Brittany Gonzalez, were the intended third-party beneficiaries of the warranty.

92.     Instant Brands, Inc.'s Instant Pot pressure cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use.

93.     Plaintiffs in this case reasonably and justifiably relied on Instant Brands, Inc.'s representations that its Instant Pot pressure cookers were a quick, effective, and safe means of cooking.

94.     Instant Brands, Inc. breached the implied warranty of fitness for a particular purpose, which was the direct and proximate cause of minor Plaintiffs' injuries and damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

### COUNT VII
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Plaintiffs v. Instant Brands, Inc.

95.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

96.     At the time Instant Brands, Inc. designed, manufactured, marketed, distributed, supplied, and sold its Instant Pot pressure cooker to Plaintiffs in this case, Instant Brands, Inc. warranted that its Instant Pot pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

97.     Members of the consuming public, including consumers such as Plaintiffs, were intended third-party beneficiaries of the warranty.

98.     Instant Brands, Inc.'s Instant Pot pressure cookers were not merchantable and fit for their ordinary purposes, because they had the propensity to lead to the serious personal injuries like those described herein.

99.     Brittany Gonzalez purchased her Instant Pot pressure cooker with the reasonable and justifiable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was merchantable and safe for its intended, foreseeable use of cooking.

100.    Instant Brands, Inc. breached this implied warranty of merchantability, which was the direct and proximate cause of minor Plaintiffs' injuries and damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT VIII
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
## 73 PA. CONS. STAT. § 201-1, et seq.
## Brittany Gonzalez v. Instant Brands, Inc.

101.    Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

102.    At the time Instant Brands, Inc. designed, manufactured, marketed, distributed, supplied, and sold its Instant Pot pressure cookers, Instant Brands, Inc. represented that these products had certain benefits that they, in fact, did not have.

103.    At the time Instant Brands, Inc. designed, manufactured, marketed, distributed, supplied, and sold its Instant Pot pressure cookers, Instant Brands, Inc. represented that these products are of a quality that they, in fact, are not.

104.    Instant Brands, Inc. violated the Unfair Trade Practices and Consumer Protection Law, giving rise to a cause of action to Plaintiff Brittany Gonzalez, as a purchaser of an Instant Pot, in one or more of the following respects:

a) Instant Brands, Inc. warranted and represented that its Instant Pot pressure cookers were safe and free of defects in materials and workmanship and that they possessed "Safety Features," which influenced reasonable consumers including Brittany Gonzalez's decision whether to purchase the Instant Pot pressure cookers; and

b) Instant Brands, Inc. warranted and represented that its Instant Pot pressure cookers would not be able to be opened when the pot was under pressure and that the lid would lock when the pot was under pressure, which was not true.

105.    Instant Brands, Inc.'s failure to warn of its Instant Pot pressure cookers' defects was a material omission that would influence a reasonable consumer's decision whether to purchase its products.

106.    Brittany Gonzalez was aware of Instant Brands, Inc.'s representations regarding the characteristics, qualities, and standards of the Instant Pot pressure cooker due to the representations contained in the User Manual, website, and YouTube videos, and other promotional materials of Instant Brands, Inc. relating to the Instant Pot pressure cookers.

107.    Brittany Gonzalez relied on the claimed truth of Instant Brands, Inc.'s representations and warranties concerning the Instant Pot pressure cookers, and she suffered personal and property damages as result of this reliance, as set forth herein.

108.    Had Brittany Gonzalez been adequately warned concerning the likelihood that the Instant Pot pressure cooker's lids could be removed while pressurized, she would have taken steps to avoid damages by, among other things, not purchasing this product.

109.    As a result of these violations of consumer protection laws, Brittany Gonzalez has incurred and will continue to incur severe emotional distress and pecuniary expenses related to her

own treatment and, separately, her daughter's treatment for severe physical and emotional injuries of her own, for which Instant Brands, Inc. is liable.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT IX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Brittany Gonzalez v. Instant Brands, Inc.

110. Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

111. Plaintiff Brittany Gonzalez was present in the zone of danger with minor-Plaintiff N.G. during her incident giving rise to this Complaint, and its aftermath, and witnessed the severe burn injuries that minor Plaintiff N.G. sustained.

112. More specifically, Brittany Gonzalez witnessed the Instant Pot blow open and its scalding hot contents erupt out of the device with great force, striking her toddler in the face, neck, shoulder, arm, and leg, which occurred as a result of the negligence, carelessness, and recklessness of Defendants as previously set forth herein, and the consequences of that negligence, carelessness, and recklessness, including N.G.'s severe burn injuries, as previously set forth.

113. The trauma and shock of Brittany Gonzalez's contemporaneous observance of the events previously set forth herein caused Brittany Gonzalez to suffer in the past, and will continue to cause her to suffer in the future, severe emotional and psychological distress and injuries, all of which have manifested physically, including but not limited to depression, nightmares, stress, anxiety, and physical and psychological ailments.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

**KLINE & SPECTER, P.C.**

By: _____

SHANIN SPECTER, ESQUIRE
BENJAMIN O. PRESENT, ESQUIRE
Attorney I.D. Nos. 40928 / 322682
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
215-772-1000
*Attorneys for Plaintiffs*